```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION


UNITED STATES OF AMERICA,      )      CRIMINAL ACTION
                               )
v.                             )      NO: 1:07-CR-148-BBM
                               )
JUSTO ALBERTO LOZANO-          )
SCHADTLER, CESAR AGOSTO        )
CHACON-VELA, and JOSE          )
FEDERICO CHACON-VELA._____ )
                               )
```

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

### I.
### Introduction

Presently before this Court are the motion of Defendant Jose Chacon-Vela to suppress evidence obtained as a result of a traffic stop of Defendant's vehicle, while it was being driven by a third party, on April 11, 2007, [Doc. 68], and the motion of Defendant Cesar Chacon-Vela to suppress evidence obtained as a result of the arrest of Cesar and Jose Chacon-Vela on April 13, 2007, [Doc. 71], which was adopted by Jose Chacon-Vela, [Doc. 90]. The motions were set down for an evidentiary hearing on September 21, 2007. [Doc. 83]. The evidentiary record is now closed and the motions have been briefed. [Docs. 88, 89, 93]. Defendant was given until November 11, 2007, to reply to the government's brief in opposition, but did not

do so.  For the reasons stated herein, the undersigned recommends that the motions to suppress [Docs. 68, 71] be **DENIED**.

## II.
## Factual Background

The facts relating to the traffic stop and search of Defendant's vehicle are largely undisputed.  At the hearing, Special Agents Darren J. Krawczyk and Jeffrey Diller, both with the Drug Enforcement Agency, testified.

A confidential informant provided the DEA with the phone number for Justo Alberto Lozano-Schadtler, known as "Beto," and advised that Beto and another individual were trying to set up a drug distribution network from Mexico to Atlanta.  (T. 22,62).  On April 9, 2007, the DEA contacted a local police officer with the Doraville Police Department to act in an undercover capacity.  (T. 22).  In that capacity, the officer got in contact with Lozano-Schadtler, "Beto."  (T. 22-23).  The undercover officer posed as a drug trafficker in Atlanta, and he made plans to meet Lozano-Schadtler, known to them as "Alberto Lozano," and Lozano-Schadtler's partner, known as "Cesar Chacon," after they arrived in Atlanta on April 11, 2007.  (T. 23, 53-54, 62).  The undercover officer and Lozano-Schadtler spoke in coded language about cocaine distribution.  (T. 25, 64).  Specifically, Lozano-Schadtler told the officer that he had fifty "computers," i.e., 50 kilograms of cocaine, that were "of

2

the best quality" that needed to be moved or held in Atlanta.  (T. 25, 64).  Lozano-Schadtler stated that they would not be bringing the drugs through the airport, but that the cocaine would be arriving separately.  (T. 64, 66).

On April 11, 2007, Lozano-Schadtler and another individual, Cesar Agosto Chacon-Vela, disembarked at the Atlanta airport from a flight inbound from Mexico City.  (T. 26).  Officers kept them under surveillance as they went through customs.  (T. 26).  While in the airport, they were met by a third man, later identified as Jose Federico Chacon-Vela, Cesar's brother.  (T. 26).  All three men left the airport together and got in a small Chevy S-10 pickup truck.  (T. 26-27).  Law enforcement conducted surveillance on the Chevy S-10, which drove to Cumming, Georgia.  (T. 27).  Law enforcement then lost track of the Chevy S-10 for about ten minutes. (T. 27).  When they located it again, it was traveling in tandem with a white Nissan Pathfinder.  (T. 27).

The two trucks stopped at a gas station, where a third Chevy, larger than the Chevy S-10, also stopped.  (T. 27-28).  At that point, the Chevy S-10 had the Chacon-Vela brothers and Lozano-Schadtler as passengers.  The driver of the Nissan Pathfinder was Sergio Ayala.  (T. 28). The driver of the third, larger Chevy pickup truck was Travis Bodenhammer.  (T. 28).  The five men met at the gas station for about five or ten minutes.  (T. 29).  After the meeting,

3

one of the men stayed with the Chevy S-10 at the gas station, and the other four men drove the Nissan and the larger Chevy to a residence in Cumming, Georgia.  (T. 29-30).

Once at the residence, a law enforcement agent watched all four men go into the garage.  Because of the size of the trucks, the garage door was not able to shut completely.  The agent heard loud banging coming from inside the garage.  (T. 30-31).  Shortly afterwards, three men and both trucks left the residence and drove back to the gas station where the Chevy S-10 and its occupant had remained, with one man remaining behind at the residence.  (T. 31-33).  The three men who had left the residence met for a few minutes with the one man who had remained at the gas station, and then Bodenhammer left in the large Chevy.  (T. 32).  The three remaining men — two of whom were Cesar and Jose Chacon-Vela and the third was unidentified at that time — took the Nissan and the Chevy S-10 by different routes to an Arby's.  (T. 33, 34).  At the Arby's, the men met up again, left the Chevy S-10 behind, and all went together in the Nissan to Wal-Mart.  (T. 33).  At Wal-Mart, they purchased three suitcases.  (T. 33-34).  Afterwards, they went back to the Arby's to pick up the Chevy S-10 again and then returned to the residence in Cumming.  (T. 35).

Twenty minutes after returning to the residence, both the Chevy S-10 and the Nissan Pathfinder departed again.  (T. 35).  The DEA

4

contacted the Forsyth County Sheriff's Department, requesting that they look for probable cause to stop the vehicles and request consent to search. (T. 36). The sheriff's department stopped the Nissan, which was occupied by Cesar and Jose Chacon-Vela and Sergio Ayala. (T. 36). Jose Chacon-Vela provided consent to search, but no contraband was found in the truck. (T. 37). The three men were not arrested. (T. 37).

Shortly afterwards, law enforcement stopped the Chevy S-10 for failure to maintain lane. (T. 37-38). The officer who stopped the Chevy asked the driver, Lozano-Schadtler, for consent to search the vehicle. (T. 38). The officer reported that he obtained consent from Lozano-Schadtler using Spanish and hand gestures. (T. 38, 66). Law enforcement found three suitcases in the back of the Chevy S-10. (T. 38). The suitcases contained approximately 60 kilos of cocaine. (T. 38).

Lozano-Schadtler was arrested and interviewed by law enforcement. (T. 39-40). In the course of the interview, he told Special Agent Krawczyk that he had granted consent to have the truck searched. (T. 42). Lozano-Schadtler also told the officers that, after Cesar and Jose Chacon-Vela and the third man bought the suitcases at Wal-Mart, they took the suitcases back to the residence where he, Lozano-Schadtler, was waiting. (T. 44). Lozano-Schadtler told the officers that, at that time, he and Jose Chacon-Vela loaded

5

the cocaine into the suitcases while Cesar Chacon-Vela and Sergio Ayala were in the immediate vicinity. (T. 44). Lozano-Schadtler told the officers that he was instructed to drive the Chevy S-10 with the cocaine, that he was supposed to follow the Nissan with the Chacon-Vela brothers and Sergio Ayala, and that he did not know where they were going. (T. 42, 44).

After interviewing Lozano-Schadtler, Special Agent Krawczyk met with Forsyth County officials and obtained arrest warrants for Cesar and Jose Chacon-Vela and Sergio Ayala. (T. 45, 46). Both arrest affidavits listed the facts on which the warrants were based as follows: "Said accused, together with another conspire [sic] to commit trafficking cocaine of more than 400 grams and did commit an overt act to effect the object of the conspiracy." (Gov. Exh. 4). The warrants also stated that the magistrate heard "other sworn testimony." Id.

When Cesar and Jose Chacon-Vela were arrested, numerous cell phones were confiscated in the search incident to the arrest. (T. 47). Following his arrest, Cesar Chacon-Vela told officers that he had come with Lozano-Schadtler into the United States to look for vehicles to purchase to take back to Mexico and sell. (T. 49). He also stated he had gone to the Cumming, Georgia residence because he was looking to purchase rental property in the United States.

6

(T. 50).  Jose Chacon-Vela told officers that he let an individual called Alberto borrow his car.  (T. 80).

### III.
### The Parties' Contentions

Defendant Jose Chacon-Vela challenges the validity of the search of his vehicle, a Chevy S-10 pick-up truck, on April 11, 2007. [Doc. 89].  Defendant Jose Chacon-Vela was not present with the Chevy S-10 was stopped and searched.  At that time, Defendant had allowed Justo Alberto Lozano-Schadtler to drive the vehicle. Defendant Jose Chacon-Vela contends that the government has not established that the consent to search granted by the driver, Justo Alberto Lozano-Schadtler, was valid.  He contends that a language barrier between Lozano-Schadtler and the law enforcement officer who stopped the truck prevented the consent from being given knowingly and intelligently.  Defendant Jose Chacon-Vela also contends that there was no probable cause to search the Chevy S-10.[1]

Defendants Cesar and Jose Chacon-Vela contend that their April 13, 2007, arrest was not valid and that the evidence obtained by virtue of the arrest should be suppressed. [Doc. 88].  They assert that the arrest warrant issued by the Forsyth County Magistrate was invalid because it lacked any factual assertions on which to base

---

[1] Defendant has not challenged the validity or duration of the stop.

7

probable cause.  They further assert that the government has not established that there was probable cause to arrest him without a warrant.

In opposition, the government responds that, by relinquishing possession of the Chevy S-10 to Lozano-Schadtler, Defendant Jose Chacon-Vela granted Lozano-Schadtler the authority to consent to a search of the vehicle. [Doc. 93].  The government asserts that Lozano-Schadtler's consent was freely given and voluntary.  The government also responds that the arrest warrants for Cesar and Jose Chacon-Vela were valid.  The government asserts that, even if the warrants were infirm, the "good faith exception" to the exclusionary rule applies.  Finally, the government asserts that the officers involved had probable cause to arrest the Chacon-Vela brothers, independent of the warrants.

**IV.**
**<u>Discussion</u>**

**A.    Search of the Chevy S-10**

An officer conducting a traffic stop may request consent to search the vehicle.  <u>United States v. Purcell</u>, 236 F.3d 1274, 1281 (11th Cir. 2001).  When valid consent is given, such a search is proper under the Fourth Amendment even without a warrant or probable cause.  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 222, 93 S.Ct. 2041,

8

2045 (1973); <u>United States v. Santa</u>, 236 F.3d 662, 676 (11th Cir. 2000).

In order to be valid, consent must be provided by someone who has the authority to grant consent or who law enforcement officers reasonably believe has the authority to grant consent. <u>United States v. Dunkley</u>, 911 F.2d 522, 525 (11th Cir. 1990)(citing <u>United States v. Matlock</u>, 415 U.S. 164, 171, 94 S.Ct. 988, 993 (1974); <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 110 S.Ct. 2793 (1990)). A third party to whom a vehicle owner has relinquished possession and control of the vehicle has the authority to consent to the vehicle's search. <u>Dunkley</u>, 911 F.2d at 526. Accordingly, because Defendant Jose Chacon-Vela loaned the Chevy S-10 to Lozano-Schadtler, Lozano-Schadlter had the authority to consent to its search.

In order to be valid, a consent also must be voluntary and the product of an "essentially free and unconstrained choice." <u>Purcell</u>, 236 F.3d at 1281 (quoting <u>Schneckloth</u>, 412 U.S. at 227). The voluntariness of consent "is a question of fact to be determined from the totality of all the circumstances." <u>Schneckloth</u>, 412 U.S. at 227. Factors a court should look at in evaluating the totality of the circumstances include "the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." <u>United States</u>

9

v. Simms, 385 F.3d 1347, 1355 (11th Cir. 2004)(quoting Purcell, 236 F.3d at 1281).

In the present case, Lozano-Schadtler's consent was obtained through "Spanish and hand gestures."  Valid consent may be granted through body language.  United States v. Ramirez-Chilel, 289 F.3d 744, 752 (11th Cir. 2002).  There is no evidence of coercion in the record.  There is also no evidence regarding Lozano-Schadtler's grasp of English or the Forsyth County deputy's command of Spanish. It seems clear, however, that Lozano-Schadtler was able to understand the officer, because Lozano-Schadtler later confirmed to law enforcement, in Spanish, that he had consented to the search. (T. 42).  The undersigned, therefore, concludes that Lozano-Schadtler's consent to the search of the Chevy S-10 was voluntary. Accordingly, the undersigned **RECOMMENDS** that the motion to suppress the fruits of that search, [Doc. 68], be **DENIED.**

**B.   Arrest of Cesar and Jose Chacon-Vela**

The Fourth Amendment requires that arrest warrants be based "upon probable cause, supported by oath or affirmation" and that they describe with particularity the person to be seized.  U.S. Const. Amend IV.  A conclusory statement to the issuing magistrate that the person named in the arrest warrant violated the law in question, without more, does not constitute probable cause. Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 564-65,

91 S.Ct. 1031, 1035 (1971); Giordenello v. United States, 357 U.S. 480, 485, 78 S.Ct. 1245, 1249-50 (1958); see also Overton v. Ohio, 534 U.S. 982, 122 S.Ct. 389 (2001)(statement by four justices that they would have granted certiorari and reversed on the grounds that a general description of a crime submitted to a magistrate does not constitute adequate probable cause for an arrest warrant).  In this case, the arrest warrants state in a conclusory fashion that Defendants conspired to traffic in cocaine, and their affidavits include no other facts.  As the warrants also refer to "other sworn testimony," it is not clear whether or not the total amount of information presented to the issuing magistrate was sufficient to constitute probable cause.

It is not necessary, however, to determine whether the Forsyth County magistrate had probable cause to issue the warrants, provided that the arresting officers had probable cause to believe that Defendants committed a felony.  An officer with probable cause to believe that someone has committed a felony may arrest the person without a warrant.  Maryland v. Pringle, 540 U.S. 366, 373-74, 124 S.Ct. 795, 802 (2003).

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Gonzalez, 969 F.2d 999, 1002

11

(11th Cir. 1992) (citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)); <u>see also</u> <u>United States v. Goddard</u>, 312 F.3d 1360, 1363 (11th Cir. 2002). A determination of probable cause must be made by considering the "totality of the circumstances." <u>Illinois v. Gates</u>, 462 U.S. 213, 233 (1983). In addition, law enforcement officials "may draw inferences based on [their] own experience in deciding whether probable cause exists." <u>Ornelas v. United States</u>, 517 U.S. 690, 700 (1996).

In this case, an initial informant's tip stated that two individuals in Mexico wanted to set up a drug distribution network in Atlanta. Following up on the tip, an undercover officer learned from "Beto Lozano" that he and "Cesar Chacon" would be flying into Atlanta on April 11, 2007, in order to meet with the undercover officer about arranging the distribution of 50 "computers" of the "best quality." Cesar Chacon-Vela, together with Lozano-Schadtler, did in fact arrive in Atlanta on April 11, 2007. They met Jose Chacon-Vela in the airport. The three men left together in a Chevy S-10 pick-up truck and had a meeting with two other men in two other trucks in a gas station parking lot. During the course of several meetings at both the gas station and a Cumming, Georgia, residence, they switched trucks and passengers frequently and drove different routes to the same place. Cesar and Jose Chacon-Vela, along with a third man, went to purchase suitcases at a Wal-Mart. They took

12

the suitcases to the Cumming, Georgia, residence.  When they drove away from the residence twenty minutes later, Jose Chacon-Vela's Chevy S-10 was stopped and 60 kilos of cocaine were found inside his truck, in suitcases.  Lozano-Schadtler, who was driving the Chevy S-10 at the time, told officers that Jose Chacon-Vela had helped him load the cocaine into the Chevy S-10 and that Cesar Chacon-Vela had been present when they did so.  This clearly provides probable cause that Jose Chacon-Vela committed a felony drug crime, conspiracy to distribute cocaine, and it also provides probable cause that Cesar Chacon-Vela committed a felony drug crime.  Therefore, law enforcement officers had probable cause to arrest Cesar and Jose Chacon-Vela even in the absence of a valid warrant.  Accordingly, the undersigned **RECOMMENDS** that the motion to suppress the evidence derived from their arrests, [Doc. 71], be **DENIED**.

## V.
## Conclusion

For the reasons expressed above, the undersigned **RECOMMENDS** that the motions to suppress, [Docs. 68, 71], be **DENIED**.  It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.

AO 72A
(Rev.8/82)



**SO REPORTED AND RECOMMENDED,** this 11th day of December, 2007.


*S/ E. Clayton Scofield III*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

14